Barron Bobo, by bis will, dated in 1829, which is somewhat verbose, and not very perspicuous, in effect, however, provides as follows. He directs the payment of his debts out of the profits of his estate, and if they should not be paid within three years, that his executors shall sell property, sufficient for that purpose. He directs that his property shall be kept together, for the support and education of his wife and children, till his youngest son, Fincher Gist Bobo, shall come of age, or marry; and then gave his wife the plantation, where he resided, called Cross Keys, ten slaves, such as she should choose, together with stock, furniture, (fee. He gives to several of his children, whom he had not advanced in his lifetime, property, equal to that which he had advanced to the others, and then directs, that his executors shall choose five persons to make distribution of the residue among his children; “to. estimate all my estate, both real and personal, among all my children, so as to make them all equal.” He appoints his wife executrix, and his sons-in-law, Robert Martin and John J. Mur-ril, executors of his will.
Upon the coming of age, of Fincher Gist Bobo, in 1830, a partition was made in pursuance of the terms of the will, and the several legatees took possession of their legacies and portions assigned them. All the legatees, with one or two exceptions, gave bond with executor, Robert Martin, conditioned to refund, if necessary, for the payment of debts.
It appears, that the share of the residue, allotted with defendant, Robert Martin, whose wife was one of the children, advanced by the testator, in his life time, was valued at $2,800: $1950 in negroes, and $850 in land. It appears *305 that, at the time of the distribution, all the debts of the estate were not paid, the principal of which, amounting to $3000, was due to Mrs. Grimke, the testatrix of the defendant, Henry Grimke.
In September, 1839, all the parties came before the ordinary, for the .purpose of accounting, and the executor, Robert Martin, was found a debtor to the estate, in the sum of $1139-04. About the same time, certain matters in controversy, between the. complainant and ■ defendant, Martin, were referred to arbitration, and the arbitrators awarded the sum of $1113-84, to be due the complainant, in private account. In Nov., 1839, all the children, ■except Mrs. Martin, having removed from the State, with their property, and the complainant having sold the Cross Keys, and preparing to remove, the defendant, Martin, gave notice of these facts, to his co-defendant, and suggested some proceeding for the purpose of making the property in the hands of the complainant liable for his debt.
In consequence of the correspondence between them, the defendant, Martin, confessed, as executor, a judgment to his co-defendant, Grimke, for the amount of the debt -to the estate of his testator. Execution was issued and lodged in the sheriff’s office, and, by Martin’s direction, he levied on two of the slaves, which had been assigned the complainant for her legacy.
The object of the bill, is to enjoin the defendant, Grim-ke, from proceeding to enforce his execution, by a sale of the slaves levied on, and in effect to compel the defendant, Martin, to pay off the debt, by applying the balance found by the ordinary to be due by him, to the estate, and also the ámount due by Martin, on the award due to the complainant personally, which complainant, who is surety for •several of the legatees, on their bond to refund, is willing to apply to that purpose, so far as may be necessary, as well as the amount which Martin, as one of the legatees, is liable to refund in payment of debts.
A question was made, whether the legacy of the complainant is to be regarded as a specific legacy, not liable to contribute along with the other legacies, to the payment of debts, or only a general legacy of quantity or number.
But this is immaterial. It is certain, that neither spe *306 cific nor general, or pecuniary legacies, are liable to contribute or abate for the payment of debts, until the residuary estate is exhausted. The very definition of a residue is, that which remains after the payment of debts and legacies ; and it is equally plain, that there was a sufficient residuary estate in this case. Though the will is somewhat confused, in its terms,' there can be no doubt about the effect of it. It gives, first, the Cross Keys and ten slaves to the complainant;, then to the children who had not been advanced, so much as will make them equal to those who had been advanced ; and then, the residue to be equally divided among all the children, and this is made expressly liable to the payment of debts.
Computing from the value of the defendant’s, Martin’s, share of the legacy, there must have been a residuary estate of more than $16,000.
On the part of the defendant, Grimke, it is urged, that, however this may be, as between the legatees themselves, it does not concern her, but that he has a right to levy his execution upon any part of the estate of the testator, in whatever hands it may be, though in those of the other executors. But I am of opinion, that the slaves in question were.no part of the estate of the testator, nor liable to the execution.
It has been decided, by the Court of Appeals, that when an executor has assented to a legacy, it is no longer liable, in the hands of the legatee, to an execution founded on a judgment against the executor.
Indeed, can there be any doubt that, by the assent, the legal title of the executor is divested ?• That the property is no longer that of the estate, but that of the legatees % And upon what principle, can the property of one man be liable to an execution against another'?
If the assent were, after execution, lodged, there might be ground to contend, that the legatee took, subject to the lien of the executor- — but this cannot be said, when the assent was before — and no injustice is done to creditors by this; for if any executor assent to legacies, before payment of debts, not reserving sufficient assets for their payment, he will be guilty of a devastavit, and.held personally liable; and this being shown upon the plea of plcne adminislramt, I sup *307 pose the judgment will he against him, tie bonis propriis, Toll. Ex. 306: 3 Bac. Ab. 54. Title. Executors and Administrators, L. 3, 4. Bac. Ab. 444. Tit. Legacies, and only in case of a fraudulent collusion, between the executors and legatees, or in case of the executors’ insolvency, the creditor has a right to pursue the legatee in this Court.
And, an executor may assent to his own legacy, Toll. Ex. 345, and this will have the effect of vesting the legal title in him personally, and not as trustee, and this is immaterial to the creditors, for if it should appear in a suit against him, that he has so assented, without reserving sufficient assets he will be personally liable, to the amount of his legacy, and the assent of one executor out of several, is sufficient, 4 Bac. Ab. 445, Tit. Legacies, and. there is no particular form of assent. And it is said, that slight circumstances are sufficient to shew it. But in this case there can be no doubt of the perfect and sound assent of all the executors to the complainant’s legacy; all were parties to the arrangement, by which distribution of the estate was made, and the complainant’s legacy assigned to her, and put in her several possession, and this long before judgment confessed by Martin. But it follows from this, that the complainant has made out no case requiring the interference of this Court. If I have taken a correct view of the law, the levy of the execution on the slaves in question, was a mere tresspass, but I need hardly say that it is not the business of equity to enjoin against the commission of a mere trespass.
Is there any other equity, on which the bill can be sustained 1 There seems to be a notion of some sort of equity, in behalf of an executor, who had fully administered, to compel another who had assets to pay off the debts, but if there be any such, at least, the party must shew some interest in himself, some injury or loss, which he will sustain, or liability to which he is exposed.
*If the executor, who has fully administered, be sued separately, he may plead in abatement the non-joinder of his co-executor.
Then, both being parties, upony/fene administravit pleaded by one, the judgment will be against him who has assets.
*308 Will it be said, that the complainant and defendant had concurred in committing a devastavit, by paying legacies before debts, and that she may be made liable in that easel If there could be a suit against her and her co-executor, in which judgment should be against him, so far as he has assets, and against both, so far as they have concurred in a devastavit, there would be nothing to complain of in this ; nor any grounds for relief in this Court. I need hardly say there are grounds of jurisdiction for the complainant to come into this Court, to compel her co-executor to apply the debt due herself personally, on the award, to the debts of the estate. She might recover it at law, and apply the money to the debts herself, if she thought proper.
As to legatees, who are under bond to refund, they are not before the Court, and the Court can determine nothing with respect to them, or their liabilities.
But I do not perceive that the complainant can, at any time, be exposed to any liability, nor, in fact, how any suit can be maintained against her.
Suppose her sued alone on the bond to Mrs. Grimke— she may plead the non-joinder of her co-executor in abatement. Suppose her to be a party, I do not see how a suit can be maintained on a bond, which, as against her, is merged in the judgment; or if she do not plead in abatement, it is not like a case of a joint or several bond, of which the obligors may be sued severally.
It is said, that all the executors are, in estimation of law, but one person representing the testator, and that the act of one is esteemed the act of all. Toll, Ex. 37: 3 Bac. Ab. 30. Tit. Executors and Administrators.
The judgment against one is a judgment against the estate, and by taking it, it would seem, that the bond was entirely extinguished, as against the estate; even if the complainant should survive, I do not perceive how any action could be maintained against her, on the judgment. The defendant, Martin, has admitted assets, by confessing the judgment. It is plain, that he is liable for the whole debt, and upon paying it, must resort to the bond for refunding. I do not perceive that complainant can be made liable, or needs relief.
If the complainant was still in possession of the land *309 devised to her, and the execution were about to be enforced against it, there would be an apparent equity to come into this Court, to compel payment of the debt, out of the personal estate, or property, first liable to pay it.
This arises from the anomaly in one law, growing out of the case of D' Urphey vs. Neilson, 2 Br. Dig. 2, and the cases which have followed it, by which lands in the hands of the heir, (or perhaps devisee,) may be seized in execution under judgment, against the executor.
But the land was sold before the judgment, and is not liable in the hands of the alienee. It is said that the heir is liable for the price, but this liability is not the subject of execution. If she should be sued forit, she may then shew that there are other portions of the estate first liable to debts. But no such proceeding is commenced or threatened.
I shall dismiss the bill; but, as it was the act of the defendant, Martin, in directing the levy on the slaves, which give occasion to it, it will be without cost; and it is ordered and decreed accordingly.
Complainant appealed on the grounds.
1st. Because the levy, by the sheriff, upon the slaves of the complainant, was not a mere trespass, they being, prima facie, liable to the payment of the Grimke debt, and therefore were a subject of levy.
2nd. Because the Court of Equity has jurisdiction to compel the co-executor to pay the funds in his hands, toward the payment of debts, to avoid injury to the other property of the estate.
3rd. Because the award in favor of the complainant, who was security to the refunding bond, was of such a character, that the Court of Equity had jurisdiction to enforce the collection of it.
4th. Because the decree was, in other respects, contrary to law and the rules and practices of the Court of Equity.